Good morning and welcome to the Ninth Circuit. Judge Collins and I would like to especially welcome Judge Corman from the Eastern District of New York, who's sitting with us today. Thank you for joining us. Thank you. We have just one case for argument this morning and that is Meyer v. DeJoy. Mr. Martinez, you may proceed. Thank you, Your Honor. At the moment, we have a rebuttal and limiting my portion here to 11 minutes, if that. Okay, well, we'll try to remind you, but keep an eye on the clock. I have the clock in front of me, so I will be mindful of that. Your Honors, my name is Richard Martinez. I appear today on behalf of Ms. Jessie Meyer, who's a Postal Service employee and who had brought claims of discrimination while employed with the Postal Service. At issue today that I'll be addressing are three distinct issues. One of the motions that were filed shortly after the dispositive motion that was filed on behalf of the Postal Service, which occurred on June 26, I'm sorry, on June 12th of 2020. The response that was filed to the dispositive motion, and lastly, I'll be addressing the issues concerning the motions for sanctions that were imposed by the District Court. With respect to the first matter, Your Honors, my focus is essentially on the motion for enlargement of time, the Rule 6 motion. What I filed at that time on June the 12th, excuse me, on June the 26th, was essentially providing the proceedings with respect to the dispositive motion to enlarge time or to strike it for a due to the length of the filing. The District Court denied all three. The core of this appeal concerns the denial of the Rule 6 motion because it was both timely, it was meritorious, and it was under the circumstance of that time required. Two years ago, we all found ourselves in the throes of a pandemic that had our entire country in shutdown. Well, but at this point on appeal, I mean, wouldn't we be required to find that there was prejudice in order to undo? I mean, because the matters did get briefed and decided, so I'm not sure that I see that there's prejudice sufficient to warrant a do-over. If I may address, Judge Collins? Sure. Twofold. One is, I believe the issues with respect to abuse of discretion, and I do acknowledge, Your Honor, that given the material that I had available to me, which was part of the motion made, was that my hard copy file was not with me. At the time, I was living with my family in Irvine, California, and commuting between Arizona and Irvine. Up until that time, that had been occurring for approximately four, four and a half years at the time. That had worked out just fine, and like all of us, none of us in a pandemic that would shut us down and essentially require us to all shelter in place. With respect to, I don't believe that prejudice is required at this, at this juncture, Your Honor. I believe what's required was, was there an abuse of discretion, and did that, which I believe is uncontested, was there a denial of me having that opportunity on behalf of Ms. Meyer to see the hard of the prejudice that did occur. One of the arguments that is made by, by counsel for the defendant is that, in fact, there had been the failure for an exhaustion of remedies, essentially premised on the fact that Ms. Meyer had both filed a union grievance with respect to the denial of her bid, and in addition, had filed an EEO claim. With respect to that, and the EEO file is attached as a part of the excerpts of record, it is clear, Your Honor, that the one matter did, did, that was on, that was a matter of grievance, did get resolved. But that's not the matter that was in this charge's claim of discrimination. It was a separate bid matter. And the distinction between the two, Your Honor, was the bid claim, the letter carrier that Ms. Meyer had exercised was with, was with respect to a letter carrier city route at Peoria, Maine. The, and the distinction is, is that the case that gets resolved ultimately in a grievance, in a separate grievance, is a matter concerning a letter carrier at Peoria downtown. Those were two distinct bid processes. And those were two distinct bid denials. The, it was an ongoing issue that occurred. So in the absence of, of the opportunity to, to get to my file and to be able to have access, I believe that there was prejudice to Ms. Meyer. And that, that, that also included the lack of an opportunity to, to review the materials that had been disclosed by both parties, both by the defendant and Mr. DeJoy, on behalf of Postmaster DeJoy, and on behalf of Ms. Meyer. Could I ask you one question? Is there anything that you haven't briefed? You've had an opportunity now to brief the issues that you want to brief. You've briefed them on appeal. I assume, including the issues that you would have briefed if he had given you the permission that was denied. We're going to review it. Why are you spending, am I wrong? And if I'm not wrong, why are you spending your entire argument on this, on this issue? Okay. I'll, I'll move on Judge Foreman. And, and I appreciate the comment. Could I, could I ask you to move on in particular to the hostile environment claim? So, you know, the district court said, not in precisely these terms, but essentially that the supervisor, Mr. Valenzuela was an equal opportunity bully, that he was, was just mean to everybody. What, what evidence would you point to in the record that the bad treatment that, that Ms. Meyer received was because of her disability rather than just because the supervisor was just generally obnoxious? Your Honor, I would, I would point you to, with respect to the, to the, to the record that was submitted was the testimony of Mr. Pitchell, the testimony of Mr. Moore, and that offered by Ms. Meyer. And with respect to that, each of them pointed out those things where she was being treated in a manner of that, that was distinct to her status as a person with a disability or perceived as such. I don't, there's certainly sufficient tests under a testimony in the record that people who found themselves in this specific category of injured employee were then being placed in, in situations that were certainly different from those who were not injured. And, and it was, it was that kind of differential treatment, Your Honor, that rose to the level that we contended changed her conditions of employment and that it made it one that was a hostile work environment, meaning that a reasonable person in that circumstance would find that it rose to the level of being an environment in which one would find it difficult, if not impossible to work. The, the, the record on that point, Judge Miller, is not as extensive as I believe it would have been, had we had the opportunity to re, to work with the entire record that was available. But that's another example of an area where the record was more limited than I believe was available with respect to the that had been exchanged as of the time of the filing of the response. So with respect to the question of exhaustion of remedies, I don't believe that the, that the defendant DeJoy can contend on appeal that one, they weren't well is that there had been a grievance filed that I did not deny that that's, that's exactly what was standard protocol in these kinds of cases. And in addition, an EEO, the record is undisputed that that this particular EEO went to, to complete conclusion, meaning there was the issuance of a final agency decision. And with respect to that final agent agency decision, the postal service had made a determination that they had not identified any violations of the statute. That then opened the door for Ms. Meyer within time period provided to file lawsuit, which she did that once that has occurred, your honor, I believe that it is the position of the ninth circuit that is, that is applicable and was not addressed by, by the district court as, as was presented in the Gerard versus Rubin decision, which is that once the, the agency concludes, as opposed to just suspending or terminating its EEO invest administrative investigation, it goes to conclusion, but then they have waived any argument that they may have with respect to exhaustion of remedies or an election of remedies or somehow Ms. Ms. Meyer abandoning her, her claims. I would also point out to the court that that issue was not raised until such time as at the dispositive motion stage, as opposed to the inception at the inception of the, of the litigation last year honors. I would like to point out that I believe that the sanctions imposed were excessive. They were not warranted and that they essentially were the discovery sanctions or of, of, of the type that enables and encourages the type of conduct that was at issue. And that was being disputed by, by plaintiffs as being an abusive discretion and putting her in a situation she should not otherwise have been in. Thank you. Thank you. And we'll hear from the government now. Okay. Please the court. My name is Colleen Shock and I am representing Postmaster General DeJoy. This plaintiff did not meet her basic obligations. She didn't meet her basic obligations as an employee before the postal service. And she didn't meet her basic obligations before the district court when she appeared before it as a plaintiff seeking relief. This not any discrimination is why she was not awarded route 8139 and why she was twice by the district court. We asked the court to affirm all the grounds of summary judgment given by the district court and also to affirm its decisions on sanctions and the disposal of plaintiff's motions. Can I make sure I understand the basis for the government's Is that rooted on the definition of executive agency and in Title V, which excludes the postal service? That's precisely it, your honor. In 5 U.S.C. Section 7121D, it states that this does not apply to postal employees. In which provision? 5 U.S.C. 7121 subsection D. There's also a related regulation at 29 C.F.R. Section 1614.301A. And it excludes, as you say, postal employees from that definition. And so we have conceded on appeal the arguments that plaintiff was discussing about the administrative exhaustion of her claim with respect to route 8139 for purposes of the reasonable accommodation claim and also the disparate treatment claim. Now is it your position that we could affirm the disposition as to those claims on summary judgment grounds because the motion filed below in the alternative was motion to dismiss and summary judgment on all three counts? Yes, in addition to the fact that we made specific arguments about a prima facie case for disparate treatment and reasonable accommodation in our reply briefs once plaintiff clarified what the basis of her claims was in her opposition brief. So all of the arguments that we're asking the court to rule on were raised before the district court. The record is complete and plaintiff has now had two opportunities in which to brief these same claims. We also believe that affirming now will preserve the resources of the district court and that there's simply no disputes of material fact that exist in the record. I'll also address at the outset the question your honor raised about the work environment claim. We do believe that there has not been any apologies. I'm going to move on to the disparate treatment claim regarding route 8139. The court should affirm because plaintiff has not stated a prima facie case but also because she was not awarded this route for a legitimate and non-discriminatory reason. That she failed to respond to a legitimate medical inquiry. The facts are undisputed. Plaintiff's postmaster asked her to provide a letter from the provider of her choice stating that she would be able to assume responsibilities of the new position within six months. This comports with the contract between plaintiff's letter carrier union and the postal service. In fact the contract provides that if she does not meet it within six months she'll be granted another six months if she provides a letter from her physician. So this is an extendable six months. There is nothing in the letter that would bar her from requesting a reasonable accommodation on that route where she to be awarded that route based on the medical inquiry letter that she would provide. Is the request that was made to her, is that in the record? I believe it was an oral request. We don't have any written documentation of the request that was made. But the fact that her postmaster did make this request multiple times, gave her an extension, and also met with her with her union representative about the request for the letter is in the record. But there isn't anything in writing on that point? No your honor. Okay. And so that's in the deposition of the postmaster. In addition to being specifically contemplated by the contract between the union and the postal service, the ADA, while it generally prohibits medical inquiries, specifically permits them related to job related functions, either pre-offer or post-offer. Being a letter carrier is a very physical job. It's throughout the record that it requires lifting, standing, driving, walking, excessive temperatures, carrying things, and we believe that the medical inquiry that was conducted here is authorized under 42 USC 12112 D2 and D4 for that matter. In addition, the court has held that medical inquiries into known disability of a former employee, although she was a former employee where there was a known disability known to affect that employee's ability to do his job. And so we believe that there are many bases on which the court can affirm that she was not awarded this new position for a legitimate and non-discriminatory reason. And again, there's no dispute of these material facts in the record. Moving to her reasonable accommodation claim, which also relates to Route 8139, we asked the court to affirm on the grounds that it's undisputed that plaintiff never held this route, as she never requested a reasonable accommodation on it. And for both of those reasons, the postal service did not have any obligation to engage with her in the reasonable accommodation process about this route. It appears that she's trying to raise a claim about a lost opportunity to request a reasonable accommodation, but this court has not recognized such a claim and neither has any other court that we can locate. So we ask you to affirm the district court on different grounds, which are well supported by the record and not subject to any dispute of material fact. With respect to her retaliation claim, we ask that the court affirm based on the same grounds as stated by the district court, that plaintiff did not identify an adverse employment action and did not show but for causation. To a point that your honor raised before, plaintiff did not provide the district record that could support either of these elements of her prima facie case. And even now, given an additional year between when plaintiff filed her opposition and her opening brief, she still has not provided any points to the record where either of those elements are supported. To the district court, she stated only, it's clear what happened to Ms. Meyer, when it happened and who on behalf of the postal service did it. And to this court, the plethora of facts provided by the appellate and also found in the submissions of the postal service support her claim. And that's at ER 299 and then her opening brief at page 46. There's ample ground for the court to affirm on that retaliation claim. And that also goes to the being experienced by plaintiff due to the denial of her motion to extend rule 61 states that the court should not overturn any orders in which the parties substantial rights were not affected. And we believe that plaintiff shown with her appeal briefs that her substantial rights were not affected by the refusal to grant the 90 day extension. And with respect to the sanctions, they were not an abusive. I'm hoping you'll get to the hostile environment claim at some point, because I have more questions about that. So what, I mean, could you address this question of whether just because Mr. Valenzuela was sort of a bully to everyone, why couldn't there still be a hostile environment claim if sort of the particular form of his bad treatment of Ms. Meyer took the form of bad treatment associated with her disability? I mean, which is what I think I understand her claim to be. So what's your answer to that? So there is no evidence in the record that it was because of her disability. So the fact that he may have been a bully to all employees is not a defense, but it just highlights the fact that plaintiff has not identified that he was any evidence that shows that he was a bully to her because of her disability. And that's an essential element of her claim that this hostile work environment existed because she was in this case disabled. But I thought her claim was that at least some of the things like being made to sit out in the parking lot, I thought her allegation at least was that that was something that he did to people who were injured. And it was because of her injury that he said, okay, now you have to go sit out apparently uselessly in the parking lot. Is that wrong? There's also evidence in the record that many employees were asked to, it's parking lot and this was a task provided by the postal service in order to assist employees to get to their full time hours. Ms. Meyer was a full time employee. And I would note that that is not an issue that Ms. Meyer thought was hostile at the time. She was specifically in her, one of her job offers, the modification provided her with several hours worth of parking lot duty. And she accepted that modified job offer along with some other custodial duties because she was unable to physically perform any of the requirements of a letter carrier job. That citation is at ER 1488, where she had the modified job offer that specifically included parking lot duty. There's also testimony from her union representative that many people had experienced the parking lot duty as part of their duties. They're supervising other employees in the parking lot and occasionally cleaning it up and that no one else had complained about it before Ms. Meyer. So there's no evidence in the record that Mr. Valenzuela was assigning her that duty for any other reason than that was what her job offer provided for. And that was a typical responsibility given out at the postal service when people needed to meet their hours. And what about the, I think the other, other objection she had was to the store being made to work in the storage room. That is also a specific offer given to her in her modified job offer that she performed periodic cleaning of the storage room and organized supplies because she was unable to perform letter carrier duties by order of her doctor. He provided all the restrictions and so her postmaster worked to come up with alternative responsibilities that she could, that Ms. Meyer could perform within her restrictions without interfering in the other, there are many unions in the postal service. So clerks have their own union without interfering in the duties of any union employees that she could perform. And Ms. Meyer accepted that modified job offer that contained several hours of storage closet organization. And so Mr. Valenzuela, there's no evidence in the record that he asked her to do those things out of some sort of hostility towards her disability. He was following the job offer that she had accepted from her postmaster. In addition, the Ninth Circuit has not yet held that a hostile work environment claim exists under the ADA and under the Rehab Act. So we believe that this is not the case to do so because not only is there not evidence that any hostility was because of her disability, but also there's no evidence that it was sufficiently severe or pervasive to alter the conditions of her employment. Does the government have a position on whether we should, I mean, I understand your argument that we don't need to here, but does the government have a view on whether such a claim exists under the Rehabilitation Act? Given that it's clearly not applicable here, we do not have a position at this time. And nothing has changed also between plaintiff's opposition to the motions for summary judgment on this issue and her brief to this court. She had an additional year and she hasn't provided any other citations to the record that show that there was severe actions by her employer. He asked her not to walk directly across the floor, but to walk in the direction of the everybody else. He asked her to perform the work that she had accepted in her modified job offer. None of that shows that he was being hostile to her, much less because of her disability. Can I ask one question about the sanction, which is given the severity of the sanction of barring damages evidence, which is close to a death knell of the claim, why wouldn't the higher showing of willfulness be applicable? Well, I believe that the court did find that she had behaved willfully because she repeated the exact same conduct as she had been previously sanctioned for in that she took long breaks, arrived late, and then left simply because it was five o'clock. And in the context of a deposition, that conduct was even more willful given that Rule 30 D1 specifically states that depositions will be seven hours of one day. And that the court had specifically adopted that requirement of Rule 30 in all of the scheduling orders in this case. So at SCR 32, it states that depositions will be conducted in accordance with the rules 30 to 32. So the court did find that she had behaved in a willful and obstructive manner and that she had done that throughout the litigation. And that the court found it particularly egregious. I apologize. I see that I'm over my time. Unless there are any further questions, I think we have your argument. Thank you. Thank you. Um, Mr. Martinez? Thank you, Judge. Let me start with something that was said earlier by counsel for Mr. DeJoy. What one is that they argue that and they really want to have it both ways. They want to say on the one hand, well, we can make an inquiry because we are aware of her limitations and her disability. But on the other hand, they want to ignore the fact that with that knowledge, they have an obligation to provide and seek out whether or not reasonable accommodation is needed. In fact, the case law and the statute is very clear on this because one, the Rehab Act is interpreted in conformity with the Americans with Disabilities Act as it's been amended. And number two, the Americans with Disabilities Act creates an affirmative duty on the employer with knowledge of injury or the need for accommodation to, to in fact, engage in that process. They did not do that. That is undisputed. Number two is that you cannot substitute and place on the employee, on the employee, the burden of, of excuse me, reasonable accommodation when it is in that fact pattern, a mutual obligation. Number three, they also ignore the fact that in fact, the Postal Service has a practice and procedure on which they engage in singling out for special treatment, adverse special treatment for employees who have a history that includes an injury on the job that requires some form of period of rehabilitation. The other thing that happens in this case, Your Honor, is that the Postal Service continues to conflate those procedures that are pursuant to an injury compensation claim with those pertaining to a claim of violations of the Rehabilitation Act. By, by accepting a work offer under the injury compensation system, that does not constitute a waiver of your right to be free of discrimination as a person with a disability or a person who's seen that with that history or treated as such. So what you have here is again, going back and forth in trying to, by convenience, argue something that, that conflates the two and is, and as was provided, you know, in, in at length, is the testimony that in fact, what the Postal Service does, at least in Phoenix District, is that it administers its, its injury compensation system to the exclusion of rights with respect to the Americans with Disabilities Act. The hostile environment claim, could you address the point that your friend made that the both the parking lot duty and the storage room duty were not, what were sort of efforts to accommodate Ms. Meyer and that they weren't perceived as punitive duties, that that was something that they, they offered to people? What was, do you have an answer to that? Yes, Your Honor. Again, that offer comes up in the context of the injury compensation claim, and you're working on what's called modified duties. And I think it's inappropriate to say that it's working within accommodations, at least in the context of the ADA. And, and those are two different concepts. So having modified duties under injury compensation, because the one that is able to perform all duties. What's interesting in this case is again, the plaintiff, excuse me, the defendant ignores the by, by bidding the position Ms. Meyer had in fact submitted records that she had been released by her employer to return to duty and was seeking to return to duty. And as the employer knew that would require with modification or excuse me, with reasonable accommodation, which is a distinct obligation that is limited to the Rehabilitation Act and only provided for in length or detail under the Americans with Disabilities Act. For all of the reasons noted, Your Honor. Why isn't it inconsistent to say that the, the changes in job duties, the storage room in the parking lot that are made as accommodations should then themselves be taken as evidence of a hostile work environment? Isn't there any contradiction in that? That's, that's understood her argument to be what's your response to that? Well, my response to that judge is that an employee who is receives a modified job offer is not in a position under the injury compensation system to decline that offer absence of basis substantiated by position, which actually did become part of the dispute in this matter. And so again, it is, Your Honor, it is conflating what the procedures are with respect to injury compensation, which is a distinct area as opposed to the Americans with Disabilities Act. So, so something judge, it reminds me of someone having to work in an environment where they're quiet about it, not protest it, and yet be highly offended and find it discriminatory, whether that's a verbal treatment, some actual conduct. And the testimony in the record was, is that those tasks that were assigned to people who had limitations were generally perceived by all to be demeaning. And also singling them out to all employees is one who has this, the imprimatur of being a less than whole employee, which is contrary to the public policy in that and the intent of the Americans with Disabilities Act. In conclusion, judge, I would urge you to look at the totality of the events. And while counsel has argued that, for example, she was entitled to a seven hour deposition, she was the one who set the starting time, which was at 10am. She was the one who never communicated that she wanted to try and complete seven hours with that time. Had she communicated such, then she would have been clearly told, excuse me, but then you need to start earlier. I routinely now do that with the US Attorney's I appreciate your time, your honor. Okay. We thank both counsel for the arguments this morning and the cases submitted. Thank you. And that concludes our calendar for the day. This court for this session stands adjourned.
judges: MILLER, COLLINS, Korman